UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | CHAPTER 7 PROCEEDING |
| LEON BILIS, ) | |
| ) | |
| DEBTOR. ) | CASE NO. 12 B 39161 |
| ) | |
| PATRICK LAYNG, ) | |
| UNITED STATES TRUSTEE, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | ADVERSARY NO. 14 A 00184 |
| vs. ) | |
| ) | |
| LEON BILIS, ) | |
| ) | |
| DEFENDANT. ) | HON. JACK B. SCHMETTERER |

## ~~UNITED STATES TRUSTEE'S PROPOSED~~ FINDINGS OF FACT AND CONCLUSIONS OF LAW

On March 14, 2014, the United States Trustee filed a complaint objecting to the Defendant's discharge under §§ 727(a)(3), (4)(A) and (5) of the Bankruptcy Code (the "UST Complaint"). Despite being granted an extension of time to do so, the Defendant failed to answer or otherwise respond to the UST Complaint. On June 23, 2014, at the request of the U.S. Trustee, the Court entered an order first, finding the Defendant in default; second, finding that all the allegations in the UST Complaint were taken as confessed against the Defendant; and third, setting a hearing for proveup and a proposed judgment (the "Order of Default").

~~The following constitute the United States Trustee's proposed findings of fact and conclusions of law.~~

### BACKGROUND FACTS

1. On October 2, 2012, Leon Bilis (the "Defendant") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. (together, with the Defendant's schedules and statement of financial affairs, the "Petition"). (UST Complaint, par. 4).

**U.S. Trustee Exhibit B**

2. The following day, the Defendant filed a Declaration Regarding Electronic Filing (the "Declaration"). (UST Complaint, par. 5).

3. In his Declaration, the Defendant stated that all the information he gave his attorney and all the information in his Petition was true and correct. (UST Complaint, par. 6).

4. The Defendant signed his Declaration under penalty of perjury. (UST Complaint, par. 7).

5. On the face of his petition, in the space calling for him to disclose all other names he used in the last 8 years, the Defendant responded "FKA Leonid Bilis." (UST Complaint, par. 8).

6. In his Schedule B – Personal Property, the Defendant listed interests he owned in three bank accounts, including an account at Devon Bank (the "Devon Bank Account"). (UST Complaint, par. 9).

7. The Defendant listed $17,828,815.36 in debts he owes his creditors in his Schedule F – Creditors Holding General Unsecured Nonpriority Claims ("Schedule F"). (UST Complaint, par. 10).

8. The debts listed on the Defendant's Schedule F include approximately $6,400,000.00 the Defendant owes to over two dozen individual creditors (the "Individual Creditors"). (UST Complaint, par. 11).

9. The Defendant characterized many of the debts he owes his Individual Creditors as unliquidated. (UST Complaint, par. 12).

10. The Defendant did not characterize any of the debts he owes his Individual Creditors as disputed. (UST Complaint, par. 13).

11. The Defendant did not characterize any of the debts he owes his Individual Creditors as contingent. (UST Complaint, par. 14).

U.S. Trustee Exhibit B

12. In response to question one in his statement of financial affairs ("SOFA"), which requires debtors to disclose their prepetition gross income, the Defendant stated that he earned $67,500.00 from Prestige Leasing Inc. in 2010, and $12,000.00 from Prestige Leasing Inc. in 2011. (UST Complaint, par. 15).

13. In response to question 10 in his SOFA, which requires debtors to disclose transfers of property outside the ordinary course of business made within two years preceding the commencement of their cases, the Defendant disclosed but one transfer - the transfer of a valueless fractional membership interest in Glenview Development, LLC. (UST Complaint, par. 16).

14. In response to question 18 in his SOFA, which requires individual debtors to disclose businesses in which they were an officer within the six years preceding the commencement of the case, the Defendant listed five corporations, including Prestige Leasing, Inc. ("Prestige Leasing"), Leart Management Corporation ("Leart"), and Glenview Development Corp., LLC ("Glenview Development"). (UST Complaint, par. 17).

## DEFENDANT'S USE OF OTHER NAMES

15. On or about April 29, 2009, within eight years before filing this case, the Defendant signed Felix Bolotin's name to a retail installment contract in connection with the purchase of a 2009 Mercedes Benz. (UST Complaint, par. 18).

16. The Defendant signed Felix Bolotin's name to that contract without his permission. (UST Complaint, par. 19).

17. The Defendant failed to disclose his use of Felix Bolotin's name in his Petition. (UST Complaint, par. 20).

18. On or about July 27, 2009, within eight years before filing this case, the Defendant signed Emma Basov's name to a retail installment contract in connection with the purchase of a 2008 Lexus. (UST Complaint, par. 21).

U.S. Trustee Exhibit B

19. The Defendant signed Emma Basov's name to that contract without her permission. (UST Complaint, par. 22).

20. The Defendant failed to disclose his use of Emma Basov's name in his Petition. (UST Complaint, par. 23).

21. On or about September 21, 2011, within eight years before filing this case, the Defendant signed Marianna Bilis' name to a retail installment contract in connection with the purchase of a 2009 Mercedes Benz. (UST Complaint, par. 24).

22. The Defendant signed Marianna Bilis' name to that contract without her permission. (UST Complaint, par. 25).

23. The Defendant failed to disclose his use of Marianna Bilis' name in his Petition. (UST Complaint, par. 26).

## DEFENDANT'S RECORDS

24. In February, 2013, the U.S. Trustee issued the Defendant a subpoena (the "First UST Subpoena") calling for him to produce certain records related to his prepetition personal and business financial affairs. (UST Complaint, par. 27).

25. In response to the First UST Subpoena, the Defendant provided the U.S. Trustee some, but not all, of the documents requested. (UST Complaint, par. 28).

26. On May 30, 2013, the U.S. Trustee issued the Defendant a second subpoena (the "Second UST Subpoena") calling for him to produce certain additional records related to his prepetition personal and business financial affairs. (UST Complaint, par. 29).

27. In response to the Second UST Subpoena, the Defendant again provided the U.S. Trustee some, but not all, of the documents requested. (UST Complaint, par. 30).

28. Despite being asked to do so in the First UST Subpoena, the Defendant did not produce any yearend financial statements for Prestige Leasing. (UST Complaint, par. 31).

U.S. Trustee Exhibit B

29. Despite being asked to do so in the First UST Subpoena, the Defendant did not produce any yearend financial statements for Glenview Development. (UST Complaint, par. 32).

30. Despite being asked to do so in the First UST Subpoena, the Defendant did not produce any yearend financial statements for Leart. (UST Complaint, par. 33).

31. Despite being asked to do so in the First UST Subpoena and in the Second UST Subpoena, the Defendant did not produce any records related to his Devon Bank Account. (UST Complaint, par. 34).

32. The only bank statement the Defendant produced for Leart was the November, 2009 statement for an account Leart maintained at Glenview State Bank. (UST Complaint, par. 35).

33. The Defendant produced bank records showing multiple transfers of funds between or among his personal bank accounts, Prestige Leasing and Glenview Development, often in rapid succession (the "Prestige Leasing Transfers"). (UST Complaint, par. 36).

34. The Defendant produced bank records showing Prestige Leasing issued him checks totaling at least $181,000.00 in 2011 from an account Prestige Leasing maintained at MB Financial. (UST Complaint, par. 37).

35. The Defendant produced bank records showing Prestige Leasing issued him checks totaling at least $194,000.00 in 2011 from an account Prestige Leasing maintained at North Shore Community Bank & Trust ("North Shore Bank"). (UST Complaint, par. 38).

36. The Defendant produced bank records showing Prestige Leasing issued the Defendant's wife, Marianna, checks, or made payments on her behalf, in excess of $50,000.00 in 2011 from an account Prestige Leasing maintained at North Shore Bank. (UST Complaint, par. 39).

37. The Defendant produced bank records indicating Prestige Leasing paid the Defendant's home mortgage on his behalf on multiple occasions during 2011 from accounts Prestige Leasing maintained at MB Financial and North Shore Bank. (UST Complaint, par. 40).

38. Upon information and belief, the Defendant failed to disclose the mortgage payments, and other payments, Prestige Leasing made on his behalf as income in his SOFA. (UST Complaint, par. 41).

39. The Defendant produced bank records showing transfers from personal accounts he maintained at USbank to Prestige Leasing totaling at least $255,900.00 within two years before the commencement of his case. (UST Complaint, par. 42).

40. The Defendant failed to disclose any of the transfers to Prestige Leasing, and perhaps other transfers, within two years before the commencement of his case in response to question 10 in his SOFA. (UST Complaint, par. 43).

41. On January 13, 2014, following the conclusion of the 2004 Exam, Defendant's counsel provided the U.S. Trustee with a Prestige Leasing balance sheet dated March 12, 2012 (the "Prestige 2012 Balance Sheet"). (UST Complaint, par. 44).

42. The Prestige 2012 Balance Sheet indicates Prestige held $1,235,473.45 in a North Shore Bank & Trust account (the "North Shore Account") as of March 12, 2012. (UST Complaint, par. 45).

43. The Defendant failed to provide the U.S. Trustee with any records for Prestige Leasing's North Shore Account for the period August 31, 2011 to March 12, 2012. (UST Complaint, par. 46).

44. The Defendant has failed to provide the U.S. Trustee with any records explaining the disposition of the funds Prestige Leasing held in its North Shore Account as of March 12, 2012. (UST Complaint, par. 47).

U.S. Trustee Exhibit B

## DEFENDANT'S TESTIMONY

45. On November 28, 2012, the Debtor appeared and testified under oath at the first meeting of creditors (the "§ 341 Meeting") in his case. (UST Complaint, par. 48).

46. At the § 341 Meeting, the Defendant affirmed the accuracy of his Petition. (UST Complaint, par. 49).

47. On December 23, 2013 and January 13, 2014, the U.S. Trustee conducted an examination of the Defendant under Fed. R. Bank. P. 2004 (together, the "2004 Exam"). (UST Complaint, par. 50).

48. At the outset of the 2004 Exam, the Defendant was administered an oath. (UST Complaint, par. 51).

49. When asked whether all the answers to all the questions in his Petition were true, the Defendant answered, aside from the names of two creditors, "yes." (UST Complaint, par. 52).

50. The Defendant testified that Prestige Leasing was involved in the business of buying, selling and leasing cars here in the United States, and exporting cars for ultimate sale to countries such as Russia, Ukraine and Kazakhstan. (UST Complaint, par. 53).

51. Defendant testified that the Individual Creditors lent money to Prestige Leasing to fund Prestige Leasing's business. (UST Complaint, par. 54).

52. The Defendant testified that Glenview Development was involved in the business of real estate development. (UST Complaint, par. 55).

53. The Defendant testified that he was unsure exactly what the nature of Leart's business was. (UST Complaint, par. 56).

54. When asked to explain $758,000 in deposits into, and $706,000 in payments from, a Glenview Development account in January, 2010, the Defendant replied "I don't have an answer for that." (UST Complaint, par. 57).

55. The Defendant later testified that Glenview Development bought cars because Prestige Leasing was on a "black list." (UST Complaint, par. 58).

56. When asked to explain $86,000 in deposits into, and $82,000 in payments from, the Leart account in November, 2009, the Defendant replied "I don't have an answer for that." (U.S. Trustee Complaint, par. 59).

57. The Defendant explained the Prestige Leasing Transfers, in part, by testifying that Glenview Development was borrowing money from Leart and Prestige Leasing. (UST Complaint, par. 60).

58. When asked "And do you have records that show all those loans?" the Defendant answered, "No." (UST Complaint, par. 61).

59. By way of further explaining the reasons for the Prestige Leasing Transfers, the Defendant testified, in part, "Just trying to – the main thing was we could not afford to bounce check because auction would close the doors, floor plans, everything gets shutdown. The business would just shutdown right away." (UST Complaint, par. 62).

## CONCLUSIONS OF LAW

60. Plaintiff is the U.S. Trustee and files this proceeding pursuant to the authority granted him in Title 11, § 727(c)(1) of the United States Code.

61. Venue of this proceeding is in the United States District Court for the Northern District of Illinois pursuant to Title 28, § 1409(a) of the United States Code.

62. This Court has jurisdiction to hear and determine this complaint pursuant to Title 28, § 157(b)(2)(J) of the United States Code and Local Rule 40.3.1(a) of the United States District Court for the Northern District of Illinois.

## THE DEFENDANT MADE FALSE OATHS

63. Section 727(a)(4)(A) provides that the court shall grant a debtor a discharge unless the debtor has knowingly and fraudulently made a false oath in connection with a case. In

order a party to prevail on a §727(a)(4)(A) claim, a party must demonstrate by a preponderance of evidence that: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *In re Stamat*, 635 F.3d 974, 978-979 (7th Cir. 2011)

64. In his complaint, the U.S. Trustee alleged the Defendant's sworn testimony at his § 341 Meeting and at his 2004 Exam affirming the accuracy of his Petition, the Defendant's statement in his Declaration that the information in his Petition was true, the Defendant's answer in his Petition that the only other name he used in the last eight years was Leonid Bilis, the Defendant's answer with respect to his income in his SOFA, and the Defendant's answer describing only a single transfer within two years in response to question 10 in his SOFA were knowing and fraudulent false oaths or accounts.

65. With respect to the first element of § 727(a)(4)(A), the Court has already found that the facts alleged in the UST Complaint are confessed against the Defendant as indicated in the Order of Default that this Court entered on June 23, 2014 (docket entry 15). This means the statements in question are false for purposes of the UST Complaint. In addition, each of those statements was made under oath, either in writing in the Defendant's sworn Declaration, or orally, after the Defendant was administered an oath at the outset of his § 341 Meeting and his 2004 Exam. Accordingly, the U.S. Trustee has satisfied the first and second elements of § 727(a)(4)(A).

66. As far as the third and fourth elements - the Defendant knew the statements were false and the Defendant made the statements with fraudulent intent - the Court concludes those two elements are satisfied as well. The Court notes that while direct evidence of fraudulent intent is seldom available, a court may nonetheless infer fraudulent intent from circumstantial

evidence or by inferences based on a debtor's course of conduct. *In re Costello*, 299 B.R. 882, 900 (Bankr. N.D. Ill. 2003). That is the situation in this case.

67. First, it appears the Defendant reviewed the questions in his Petition carefully before he answered them. The Defendant diligently listed $17,828,815.36 in unsecured debt, including the approximately $6,400,000.00 he owes to his Individual Creditors in his Schedule F. Further, he must have thought about names he'd used in the past in completing his Petition. This is because the Defendant actually listed a former "a/k/a" name in his Petition. Likewise, the Defendant's disclosure of three different types of income he received - from Prestige Leasing, K-1 type income and unemployment income - in his answer to question one in his SOFA suggests the Defendant exercised a degree of care in responding to that question. And the fact that he disclosed the transfer of a valueless LLC membership in his SOFA means the Defendant must have contemplated and understood the concept of transferring property within two years before he filed his bankruptcy case.

68. Second, each of the false statements the Defendant made inured to his benefit and to his creditors' detriment. The Defendant's failure to disclose the names of the individuals whose names he used on installment purchase applications delayed, at least initially, the lenders who financed the purchases. The Defendant's failure to disclose the payments Prestige Leasing made on his and his wife's behalf misinformed parties in the case and sheltered that income from the taxing authorities. Likewise, the Defendant's failure to disclose the (at least) $255,900.00 he transferred prepetition to Prestige Leasing shielded the recipient of those transfers, and perhaps others, from potential avoidance actions.

69. In other words, when it was to his advantage to answer a question completely and accurately – as in listing all his creditors – the Defendant did so. But when answering questions completely and accurately could work to his disadvantage – such as disclosing other names he used, reporting his true income and disclosing hundreds of thousands of dollars of prepetition

U.S. Trustee Exhibit B

transfers – the Defendant's sworn answers were false. Based on the Defendant's course of conduct – careful, complete answers when it was to his benefit; false answers when it was not - the Court concludes the Defendant knew these statements were false and made them with the intent to deceive, satisfying the third and fourth elements of § 727(a)(4)(A).

70.    In the alternative, the Court can easily conclude the Defendant recklessly disregarded the truth in his answers to those questions and in his sworn testimony. A reckless disregard for the truth is established when a debtor's petition contains numerous false statements, the totality of which rise above mere negligence. *In re Stamat*, 635 F.3d 974, 982 (7th Cir. 2011). Reviewing the facts, the Court finds the totality of the Defendant's numerous written and oral false statements amount to more than mere negligence. Failing to disclose names used in the past, underreporting income, and failing to disclose hundreds of thousands of dollars of prepetition transfers amount to much more than mere negligence. The Defendant's numerous false statements, at a minimum, establish his reckless disregard of the truth.

71.    Last, a party objecting to a debtor's discharge must show the debtor's false statements were material to the bankruptcy case. A statement is material if it relates to the debtor's estate, involves the discovery of assets or the disposition of property, or the debtor's entitlement to a discharge. *In re Costello*, 299 B.R. 882, 900 (Bankr. N.D. Ill. 2003).

72.    A fundamental duty of a bankrupt debtor is the duty to disclose names the debtor has used in the past. *See Ross v. RJM Acquisitions Funding, LLC*, 480 F.3d 493, 498 (7th Cir. 2007). The Defendant did not disclose three names he used in the years before he filed this case. The facts show he used those names to borrow money to purchase luxury automobiles. The Defendant's failure to disclose those names is material because it relates to his entitlement to a discharge. Indeed, once the Defendant was found out, the lenders filed objections to the

U.S. Trustee Exhibit B

dischargeability of the debts the Defendant owed them.[1] These creditor complaints demonstrate the materiality of this false statement.

73. In addition, § 704 of the Code provides that trustees shall, *inter alia*, collect and reduce to money property of the estate and investigate the financial affairs of the debtor. Chapter 5 of the Bankruptcy Code gives trustees certain avoidance powers and enables them to recover assets for the benefit of creditors. In general, a debtor's failure to disclose prepetition transfers prevents a trustee from performing this essential function. *In re Fink*, 351 B.R. 511, 525 (Bankr. N.D. Ill. 2006)(trustees and creditors have the right to information which will enable them to evaluate a debtor's case and administer the estate's property). In this case, the Defendant failed to disclose at least $255,900.00 he transferred to Prestige Leasing in the two years before he filed his case. In addition to preventing the Chapter 7 trustee from fulfilling his duties to the estate, his transfers to Prestige involved property of the estate and the disposition of assets. The Defendant's failure to disclose them, therefore, was material.

74. Also important is the accurate disclosure of a debtor's income. For example, full disclosure of the sources of a debtor's income can lead to the discovery of assets a trustee could administer. A debtor who, like the Defendant in this case, underreports his income could conceivably prevent parties from seeking the dismissal of the case as a presumed abuse under § 707(b)(2) or a simple abuse under § 707(b)(3). The Court finds that this statement, like the Defendant's other false statements, relates to the Defendant's case and was material.

75. Further, the Seventh Circuit has observed that material omissions in bankruptcy petitions impede a court's ability to fulfill its responsibility just as much as explicitly false statements do. *See U.S. v. Ellis*, 50 F.3d 419, 423 (7th Cir. 1995). And there comes a point when a debtor's aggregate errors and omissions cross the line past which the debtor's discharge should

---

[1] The Court may take judicial notice of its dockets in related cases. *In re Chemisphere Partners*, 90 B.R. 380, 381(Bankr. N.D. Ill. 1988). Solely for the limited purpose of establishing two creditors filed objections to the dischargeability of debts the Defendant owes them, see 13 A 00787 – *MB Financial Bank, N.A. v. Leon Bilis,* and 13 A 01197 – *American Eagle Bank v. Leon Bilis*.

**U.S. Trustee Exhibit B**

be denied. *Fink*, at 528. By omitting names he's used in the past, hundreds of thousands of dollars in transfers to Prestige, and underreporting his income, the Defendant's conduct has taken him across that line. Having satisfied each of the elements of § 727(a)(4)(A), the U.S. Trustee's objection to the Defendant's discharge is sustained and the Defendant's discharge is denied.

### THE DEFENDANT FAILED TO KEEP OR PRESERVE BOOKS AND RECORDS

76. Section 727(a)(3) provides that the court shall grant a debtor a discharge unless the debtor fails to keep or preserve books and records from which the debtor's financial condition may be ascertained, unless the failure to do so was justified under all of the circumstances of the case. *In re Costello*, 299 B.R. 882, 896 (Bankr. N.D. Ill. 2003). As a precondition to discharge, § 727(a)(3) requires debtors to produce records which provide creditors sufficient information to ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period of time. *In re Juzwiak*, 89 F.3d 424, 427 (7th Cir. 1996). Courts and creditors are not required to speculate as to the financial history of the debtor, nor should they be compelled to reconstruct the debtor's affairs. *Id.*

77. Based, among other things, on the Defendant's incomplete responses to the First UST Subpoena and the Second UST Subpoena, his sworn testimony at his 2004 Exam[2], his failure to produce any yearend financial statements for Prestige Leasing, Glenview Leasing, or Leart, his failure to produce any records related to his Devon Bank Account, his production of only one monthly statement for an account Leart maintained at Glenview State Bank, his failure to provide the U.S. Trustee with any records for Prestige Leasing's North Shore Account for the period August 31, 2011 to March 12, 2012, and his failure to provide the U.S. Trustee with any records explaining the disposition of the $1,235,473.45 in funds Prestige Leasing held in its

---

[2] For example, as noted above, when asked "And do you have records that show all those loans?" the Defendant answered, "No." (UST Complaint, par. 61). With this answer, the Defendant has, in essence, conceded he failed to keep or preserve adequate records.

U.S. Trustee Exhibit B

North Shore Account as of March 12, 2012, the Court concludes the Debtor failed to keep or preserve books and records from which his financial condition may be ascertained, without justification under all of the circumstances of this case, as contemplated by § 727(a)(3). Accordingly, his discharge is denied on that ground as well.

## THE DEFENDANT FAILED TO SATISFACTORILY EXPLAIN A LOSS OF ASSETS

78. Section 727(a)(5) provides, in relevant part, that the court shall grant a debtor a discharge unless the debtor fails to satisfactorily explain any loss or deficiency of assets to meet the debtor's liabilities. *In re Costello*, 299 B.R. 882, 901 (Bankr. N.D. Ill. 2003). In order to prevail, an objecting party must first establish the debtor owned substantial and identifiable assets at a particular point in time and then demonstrate that those assets are no longer available to be used to repay creditors. *In re Carmell*, 424 B.R. 401, 418-419 (Bankr.N.D. Ill. 2010). If the objector satisfies those two requirements, the burden shifts to the debtor to explain the loss or deficiency of assets in a satisfactory manner. *In re Kanan*, 2010 WL 4823848, *4 (Bankr. N.D. Ill. November 22, 2010).

79. The Defendant's Schedule F reflects $17,828,815.36 in debts he owes his unsecured creditors. And, by way of example, the Defendant provided the U.S. Trustee with bank statements showing Prestige issued him checks totaling at least $375,000.00 in 2011. The Defendant's undisclosed transfers to Prestige total at least $255,900.00 but do not explain the loss of the $375,000.00 Prestige paid him in 2011, or the money he owes his creditors listed on his Schedule F. And while the Defendant described the rapid succession of transfers between and among himself, Prestige and Glenview Development as an effort to prevent checks from bouncing (UST Complaint, Par. 62), this uncorroborated statement is inadequate. *In re Wasserman*, 332 B.R. 325, 333 (Bankr. N.D. Ill. 2005)(to overcome an objection to discharge under § 727(a)(5), a debtor's account must be more than a vague, indefinite and uncorroborated hodgepodge of financial transactions).

**U.S. Trustee Exhibit B**

80. By virtue of, among other things, the Defendant's incomplete responses to the First UST Subpoena and the Second UST Subpoena, his sworn testimony at his 2004 Exam[3], his failure to produce any yearend financial statements for Prestige Leasing, Glenview Leasing, or Leart, his failure to produce any records related to his Devon Bank Account, his production of only one monthly statement for an account Leart maintained at Glenview State Bank, his failure to provide the U.S. Trustee with any records for Prestige Leasing's North Shore Account for the period August 31, 2011 to March 12, 2012, and his failure to provide the U.S. Trustee with any records explaining the disposition of the $1,235,473.45 in funds Prestige Leasing held in its North Shore Account as of March 12, 2012, the Court concludes the Debtor failed to satisfactorily explain the loss or deficiency of assets to meet his liabilities as contemplated by § 727(a)(5) of the Bankruptcy Code. Having satisfied the two elements of § 727(a)(5), the U.S. Trustee's objection to the Defendant's discharge is sustained and the Defendant's discharge is denied.

DATED: July 22, 2014

ENTER:

Hon. Jack B. Schmetterer
United States Bankruptcy Judge

JUL 22 2014

Prepared by:

Stephen G. Wolfe, Attorney
OFFICE OF THE U.S. TRUSTEE
219 S. Dearborn, Room 873
Chicago, Illinois 60604
(312) 886-7480

---

[3] For example, as noted above, when asked to explain $758,000 in deposits into, and $706,000 in payments from, a Glenview Development account in January, 2010, the Defendant replied "I don't have an answer for that." (UST Complaint, par. 57). When asked to explain $86,000 in deposits into, and $82,000 in payments from, the Leart account in November, 2009, the Defendant replied "I don't have an answer for that." (UST Complaint, par. 59). With these answers, the Defendant has, in essence, conceded he was unable to explain his loss of assets.

U.S. Trustee Exhibit B